# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

JUMAR HENRY,

      Petitioner,

v.                                                  Case No. 3:20-cv-493-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

## I.   **Status**

Petitioner Jumar Henry, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. See Doc. 1. Petitioner challenges a state court (Duval County, Florida) negotiated plea of guilty and resulting judgment of conviction for second degree murder. Petitioner is serving a thirty-five-year term of incarceration. Respondents responded. See Doc. 8 (Resp.).[1] Petitioner replied.

_____

[1] Attached to the Response are various exhibits. The Court refers to the exhibits as "Resp. Ex."

<u>See</u> Doc. 11. This case is ripe for review.[2]

## II.  <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal

3

quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of

4

reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   <u>Procedural History</u>

The procedural history of Petitioner's state court case is set out in the trial court's order denying Petitioner's Florida Rule of Criminal Procedure 3.850 motion for postconviction relief:

> The Defendant was arrested on April 25, 2010 and charged with one count of Murder for the death and decapitation of his mother. On May 20, 2010, an Indictment charging the Defendant with First-Degree Murder was returned by the Grand Jury. Based on this offense, the Defendant was facing a mandatory sentence of Life in prison, until the State filed its Notice of Intent to Seek the Death Penalty on May 27, 2010. On June 1, 2010, the Defendant entered a plea of not guilty to the Indictment.

> Shortly thereafter, Defendant's counsel retained a psychologist, Dr. Harry Krop, who examined Defendant and determined that Defendant was incompetent to proceed. A second psychologist, Dr. William Meadows, was appointed by the trial court to examine the Defendant. Defense counsel requested permission to attend the psychological examination with a videographer, for determination of "Defendant's competency in his present medical condition and whether Defendant was competent at the time the murder was committed." After a hearing on the Defendant's competency, and relying on the reports of both experts, on September 17, 2010, the trial court adjudged the Defendant Incompetent to Proceed and committed him to a treatment facility of the Department of Health and Rehabilitative Services.

> Every six months thereafter, the trial court reviewed the regular evaluation reports and status of Defendant's competency, and relying on the experts' findings and the stipulation of the parties to the

experts' reports, found that the Defendant continued to meet the criteria for involuntary hospitalization, and entered written Orders dated March 2, 2011, September 2, 2011, and February 3, 2012, continuing same. In August 2012, Defendant was examined by another psychologist and underwent neuropsychological testing by a neuropsychologist, who later reported to the Court via letter dated August 31, 2012, that the Defendant was competent to proceed. As such, a hearing on Defendant's competency was scheduled for November 20, 2012. However, the hearing was rescheduled by the Court. Ultimately, defense counsel waived live testimony by the expert at a hearing on the restoration of competency, and the trial court entered an order, relying upon the experts' findings and the stipulation of the parties to the admission of the expert's report, that the Defendant was competent to proceed.

Subsequently, the State and Defense entered an agreement whereby the State withdrew its Notice of Intent to Seek the Death Penalty, and the Defendant waived his right to a twelve-person jury for trial in his case. On the morning of jury selection, August 7, 2014, the Defendant entered a plea of guilty to a negotiated sentence with the State to the lesser-included offense of Second Degree Murder. As contemplated, the Defendant was adjudicated guilty and sentenced to 35 years in prison, with credit for 1556 days served, to run concurrent with Defendant's other cases: 2010-CF-4481 and 2010-CF-7140. The mandatory court costs and surcharges were also imposed.

On August 20, 2014, the Defendant, pro se, timely filed a Motion to Withdraw Plea, claiming that he was coerced by his counsel to enter his plea, and that the trial court did not establish a proper factual basis or conduct a proper plea colloquy. The court denied the Motion via Order entered on September 22, 2014, finding that the record conclusively refuted the

> allegations. The Defendant sought a direct appeal of both his judgment and sentence, and the denial of his Motion to Withdraw Plea. The First District Court of Appeal per curiam affirmed via Mandate issued on August 18, 2015.

Resp. Ex. E at 189-91(record citations omitted). Petitioner then filed a Rule 3.850 motion, which the trial court summarily denied. Id. at 1-20, 189-99. The First DCA per curiam affirmed the trial court's denial without a written opinion. Id. at 308. The Petition followed.

## IV.    **The Petition**

Petitioner raises four Grounds for relief in the Petition. See generally Doc. 1. Each claim, however, is barebones and vague on whether Petitioner intends to assert a claim of trial court error or ineffective assistance of counsel. Petitioner alleges that he exhausted the allegations in all four Grounds by raising the claims in his Rule 3.850 motion. Id. After a liberal reading of the Petition, Respondents construe Grounds One, Two, and Three as claims of ineffective assistance of counsel, and Ground Four as a claim of trial court error. Resp. at 17-32. In his Reply, however, Petitioner objects to Respondents' decision to construe his claims in that way, but he does not clarify how Respondents, or the Court, should otherwise address the Grounds. See generally Doc. 11. In any event, all allegations seem to be premised on the notion that Petitioner's guilty plea was involuntary because either the trial

9

court or his trial attorney failed to ensure Petitioner underwent an adequate competency hearing before his plea. To that end, the Court attempts to decipher Petitioner's claims and addresses the issues in turn.

### A. Ground One, Ground Two, Ground Three

In Ground One, Petitioner argues that his guilty plea was involuntary because the trial court failed to ensure that he was afforded an adequate competency hearing before the plea. Doc. 1 at 5. In Ground Two, Petitioner asserts that his trial counsel was ineffective for waiving Petitioner's right to a competency hearing, misadvising him that a competency hearing was not in his best interest, and coercing him to enter a plea of guilty. Id. at 7. In Ground Three, Petitioner argues that Florida Rules of Criminal Procedure 3.210 and 3.212 mandated that Petitioner undergo another competency hearing before his plea and counsel's failure to ensure the proceeding occurred violated his due process rights as Petitioner's "sanity issue was inconclusive." Id. at 8.

Petitioner raised a version of these issues in ground three of his Rule

3.850 motion.[3] Resp. Ex. E at 15-19. The trial court denied the claims as follows:

> In his last ground, Defendant alleges ineffective assistance of counsel for waiving Defendant's competency hearing, which is not permitted. This court recognizes that a defendant cannot waive a competency hearing, and that a waiver is prohibited by Florida Rule of Criminal Procedure 3.210. See Raithel v. State, 226 So. 3d 1028 (Fla. 4th DCA 2017). However, the record again refutes the Defendant's allegations. A competency hearing was not waived, rather defense counsel waived the presentation of live testimony and evidence, and instead stipulated that the Court could rely on the written report of the neuropsychologist in making its findings about competency. Indeed, the trial court's order, with the report attached thereto, indicates same. "[T]he trial court may decide the issue of competency on the basis of the written reports alone," with the consent of the parties. Fowler v. State, 255 So. 2d 513, 515 (Fla. 1971); accord Roman v. State, 163 So. 3d 749, 751 (Fla. 2d DCA 2015) ("If the parties agree, the trial court can make its competency determination based solely on experts' reports."). In this matter, the trial court did just that, with the consent of the parties.

> Additionally, the trial court did not just rely on defense counsel's stipulation to competency, but also relied on the expert's reports, and made an express judicial determination of the defendant's competency. (Exhibit T – transcript of proceeding, p. 4, 1.23-25: "Then based on the report and stipulation by counsel,

---

[3] In their Response, Respondents construe Ground Two of the Petition as being identical to the claim Petitioner raised in ground two of his Rule 3.850 motion, in which he argued that trial counsel was ineffective for misadvising him that he would serve his sentence in a mental hospital following his guilty plea. Resp. at 25. But in ground three of his Rule 3.850 motion, Petitioner argued that his plea was involuntary because trial counsel waived his right to a competency hearing and the trial court failed to conduct a proper competency evaluation prior to his plea. Resp. Ex. E at 15-19. Thus, the Court finds that Ground One and Two of the Petition are similar to the allegations of ground three of the Rule 3.850 motion and address the issues together.

11

I'll find that Mr. Henry is competent to proceed at this point."). The trial court also entered a written order on its determination of competency, as required by the rule. "If a trial court finds that a defendant is competent to proceed, it must enter a written order so finding." Shakes v. State, 185 So. 3d 679, 681 (Fla. 2d DCA 2016).

To the extent that Defendant's Motion is attacking the adequacy of the competency hearing held by the trial court, or any error on the part of the trial court in conducting said proceeding, such claims are not cognizable in a Rule 3.850 Motion for Postconviction Relief. "In Florida state courts, neither a procedural nor a substantive competency claim of trial court error may be raised in a postconviction motion." Dougherty v. State, 149 So. 3d 672, 676 (Fla. 2014). Thus, any claim that Defendant was not afforded proper competency procedures was procedurally barred because he did not raise the issue on direct appeal. Based on a review of the record facts of this case, as well as the binding legal precedent regarding competency proceedings, this Court finds that the Defendant is not entitled to relief on this claim. See McCray v. State, 71 So. 3d 848 (Fla. 2011) (upholding court's competency finding where court held a brief competency hearing at which no witnesses were presented, however the parties stipulated to competence and the court relied on the reports received.).

Moreover, this Court finds that the Defendant has not only failed to establish deficient performance by his attorney, but has also failed to establish prejudice in this matter. Specifically, as to the prejudice prong, the Defendant is unable to show "whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty

12

and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>see</u> <u>Grosvenor v. State</u>, 874 So. 2d 1176, 1179 (Fla. 2004). The Defendant cannot do so herein.

Despite the bare allegation in his Motion that he would have insisted on going to trial, the record establishes that Defendant willingly, voluntarily and knowingly entered into a negotiated disposition with the State whereby the State waived the death penalty and agreed to allow the Defendant to plead guilty to a lesser-included offense. By doing so, Defendant avoided a possible death sentence or mandatory sentence of life on a first-degree murder charge. Thus, looking at the totality of the circumstances, this Court finds that there was not a reasonable probability that the defendant would have insisted on going to trial.

Resp. Ex. E at 196-99 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the denial without a written opinion. Resp. Ex. H. The Court addresses these claims under the deferential standard for federal court review of state court adjudications.

### i.    *Trial Court Error*

Liberally construing Ground One, Petitioner appears to claim that his procedural and substantive due process rights were violated with the trial court failed to adequately evaluate his competency before accepting his guilty plea. In addressing this issue during Petitioner's Rule 3.850 proceedings, the state court found it was procedurally barred because Petitioner failed to raise the issue on direct appeal. The Court defers to that finding.

13

"[T]he conviction of an accused person while he is legally incompetent violates due process." <u>Pate v. Robinson</u>, 383 U.S. 375, 378 (1966). "<u>Pate</u> . . . established a rebuttable presumption of incompetency upon a showing by a habeas petitioner that the state trial court failed to hold a competency hearing on its own initiative despite information raising a bona fide doubt as to the petitioner's competency." <u>James v. Singletary</u>, 957 F.2d 1562, 1571 (11th Cir. 1992). "Florida law holds that <u>Pate</u> claims 'can and must be raised on direct appeal.'" <u>Tittle v. Sec'y, Fla. Dep't of Corr.</u>, 605 F. App'x 961, 962 (11th Cir. 2015)[4] (quoting <u>Nelson v. State</u>, 43 So. 3d 20, 33 (Fla. 2010)).

Here, following the denial of his pro se motion to withdraw plea, Petitioner, with help from appointed counsel, sought a direct appeal. Resp. Ex. A at 228. Appellate counsel filed an initial brief under <u>Anders v. California</u>, 386 U.S. 738 (1967), representing that no good faith argument of reversible error could be made. Resp. Ex. B. The First DCA gave Petitioner leave to file a pro se initial brief, but he declined to file one. Resp. Ex. D. Later, Petitioner raised the current trial court error claim in his Rule 3.850 motion, and the state court refused to consider the claim on an independent and adequate state procedural

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

ground. <u>Maples v. Thomas</u>, 565 U.S. 266, 280 (2012). There is no evidence that the state court applied its procedural rule in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001). And thus, this issue is procedurally barred, and Petitioner fails to establish cause and prejudice to excuse the default.

Notwithstanding the procedural bar, and assuming this issue is properly before the Court for consideration, it still lacks merit. To succeed on a substantive competency claim, a petitioner must demonstrate by a preponderance of the evidence that he was in fact incompetent at the relevant time. <u>Medina v. Singletary</u>, 59 F.3d 1095, 1106 (11th Cir. 1995); <u>see also</u> <u>Johnston v. Singletary</u>, 162 F.3d 630, 637 n.7 (11th Cir. 1998). The relevant standard for assessing a criminal defendant's mental competency is set forth in <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960). The <u>Dusky</u> standard requires a court to determine whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." <u>Id.</u>; <u>see also</u> <u>Godinez v. Moran</u>, 509 U.S. 389, 401-02 (1993) (holding the <u>Dusky</u> standard similarly applies in guilty pleas). Whether a petitioner has the present ability to consult with his lawyer and understand the proceedings may be gleaned from hearing and trial transcripts: "The best

evidence of [a petitioner's] mental state . . . is the evidence of his behavior" at the relevant time, such as during trial or during a plea hearing. See Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1259 (11th Cir. 2002). A petitioner must do more than assert he was suffering from a mental deficiency at the time. Indeed, "not every manifestation of mental illness demonstrates incompetence . . . ; rather, the evidence must indicate a present inability to assist counsel or understand the charges." Medina, 59 F.3d at 1107 (internal citations omitted).

Here, nothing in the record demonstrates Petitioner was incompetent under the Dusky standard at or near the time he entered his plea. About four months after Petitioner's arrest, the trial court appointed Dr. William Meadows to conduct a competency evaluation on Petitioner. Resp. Ex. A at 62. After his exam, Dr. Meadows issued a report recommending that the trial court declare Petitioner incompetent to proceed and suggested he be involuntarily hospitalized for potential competency restoration. Id. at 81. The trial court then conducted a hearing, during which trial counsel waived the presentation of expert testimony and accepted the findings of Dr. Meadows. See State v. Henry, No. 16-2010-CF-4480 (Fla. 4th Cir. Ct.).[5] The trial court adjudged Petitioner

_____

[5] The Court takes judicial notice of Plaintiff's state court dockets. See McDowell Bey v. Vega, 588 F. App'x 923, 927 (11th Cir. 2014) (holding that district court did not err in taking judicial notice of the plaintiff's state court docket when dismissing § 1983 action); see also Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

incompetent to proceed on September 21, 2010, and ordered that he be committed for treatment. Resp. Ex. A at 84-86. Petitioner was committed to Florida State Hospital for treatment where doctors prescribed Petitioner Zyprexa and Haldol to control psychotic symptoms; Depakote to stabilize mood; and Cogentin to treat side effects from those medications. Id. at 93. Doctors also conducted several competency evaluations in December 2010; June 2011; and in January 2012. Id. at 89. After each evaluation, the respective doctor issued a written report. Id. at 77-133. A review of those reports shows that Petitioner was responding well to treatment, maintaining medication compliance, and showing clear improvement in restoring his competency. Id. But the doctors continued to recommend that Petitioner be considered incompetent, remain involuntarily committed, and continue inhouse treatment. Id. After each evaluation, the trial court conducted a hearing, during which trial counsel waived the presentation of live testimony and accepted the findings of the doctor. See Henry, No. 2010-CF-4480.

On July 26, 2012, and August 28 and 29, 2012, Dr. Darah E. Granger evaluated Petitioner. Resp. Ex. A at 141. In her written report, Dr. Granger found that Petitioner had "a rational and factual understanding of his legal situation as well as sufficient ability at present to consult with counsel with a reasonable degree of rational understanding." Id. at 152. Based on her findings,

she recommended that Petitioner be found competent to proceed. Id. Dr. Granger also relied on Dr. Karen Steingarten's neuropsychological evaluation of Petitioner. Id. at 154. On September 24, 2013, the trial court conducted a hearing, during which the following exchange occurred:

> MR. DE LA RIONDA: And finally, Your Honor, I believe we have an issue as to the competency. I believe defense is now stipulating, as is the State, to the defendant's competency as to all three cases, that the defendant is competent, he was found competent at the Florida State Hospital.
>
> MR. BATEH: That's correct, Your Honor. I believe that the competency report was from August 31st, 2012. I don't know if it was ever placed on the record that Mr. Henry is competent according to the report, and the defense would stipulate to that report being entered as a Court Exhibit.
>
> THE COURT: Okay. Then based on the report and stipulation by counsel, I'll find that Mr. Henry is competent to proceed at this point. So, I'll enter an appropriate order to that effect.

Resp. Ex. E at 314-15. That same day, the trial court entered an order declaring Petitioner competent to proceed.[6] Resp. Ex. A at 170.

In December 2013, the state withdrew the death notice and Petitioner agreed to waive his right to a twelve-person jury. Henry, No. 2010-CF-4480.

---

[6] Petitioner's state court docket shows that a new judge was assigned to Petitioner's case during the timeframe between Dr. Granger's evaluation and the issuance of the order declaring Petitioner competent, and that change may explain the delay between the events.

18

About nine months later, Petitioner entered his negotiated plea of guilty. Resp. Ex. A at 182-83. During his plea hearing, Petitioner showed a "sufficient present ability to consult with his lawyer . . . [and] he ha[d] a rational as well as factual understanding of the proceedings against him." Dusky, 362 U.S. at 402. He stated, under oath, that he reviewed the negotiated plea form with his attorney, he understood the contents of the documents, and he confirmed that he signed the plea form. Resp. Ex. A at 208-09. He testified that he understood he was facing a charge of first degree murder that carried a mandatory life sentence but that he was entering a plea of guilty to the lesser included offense of second degree murder in exchange for a thirty-five-year term of incarceration. Id. at 210-11. He advised the trial court that he was entering his plea freely, willingly, and voluntarily; and that his decision to plea was because he committed the offense. Id. at 211-12. Petitioner also stated he was still in compliance with his medication routine and that treatment did not affect his understanding of the proceedings.

> THE COURT: As you stand here before me are you under the influence of any drugs, alcohol, medications or any conditions that would prevent you from understanding what I am saying or what is occurring in court?
>
> MR. BATEH: Your Honor, I apologize, Mr. Henry is prescribed three medications through the jail. One is Depakote, Klonopin, and the third is Zyprexa. Mr. Henry has been prescribed these medications for quite

> a while. And as of yesterday when we went over the blue form and as of today he stated that he understood, although he is taking those medications.
>
> THE COURT: All right. Is that correct, Mr. Henry? You are taking those three medications as prescribed?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And have you understood everything I have said to you thus far this morning?
>
> THE DEFENDANT: Yes, ma'am.

Id. at 210-12. Petitioner acknowledged the constitutional rights he waived by pleading guilty and made no objections when the state provided a factual basis for the plea. Id. at 212-18. Based on Petitioner's sworn statements, the trial court accepted the guilty plea, found it was knowingly and voluntarily entered, and sentenced Petitioner to a thirty-five-year term in accordance with his negotiated disposition. Id. at 218-19.

The record shows that Petitioner's decision to enter his negotiated plea of guilty was voluntarily his own and made with a full understanding of the consequences that followed. Considering the totality of the circumstances of Petitioner's plea, Petitioner fails to carry his heavy burden to demonstrate he was actually incompetent when he entered his guilty plea. Thus, Ground One is denied.

### ii. Ineffective Assistance of Trial Counsel

Liberally construing Grounds Two and Three, Petitioner argues that his trial counsel was ineffective for waiving Petitioner's right to a competency hearing before his plea, which he argues Florida Rule of Criminal Procedure 3.210 prohibits, and for coercing him to enter a plea of guilty. Doc. 1 at 7, 8. When addressing these issues during Petitioner's Rule 3.850 proceedings, the state court found that counsel did not act deficiently because he did not waive the competency hearing but only waived the presentation of live testimony. Resp. Ex. E at 197. It also found Petitioner was not prejudiced by any alleged deficiency as there is no reasonable probability that but for the alleged errors, Petitioner would have not pled guilty and insisted on going to trial. Id. at 198. The Court defers to the state court's adjudication.

In applying that deference, the Court notes that even assuming deficient performance, Petitioner fails to establish resulting prejudice. Under the prejudice prong here, Petitioner must show "there was a reasonable probability that he would have received a competency hearing and been found incompetent had counsel requested the hearing." Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 477 (11th Cir. 2012) (quoting Strickland, 466 U.S. at 688). Under this standard, the prejudice prong of the ineffective assistance claim demands the same showing as that under a substantive competency claim. Notably,

Petitioner must demonstrate he was actually incompetent at the time of the plea. Id. But as discussed earlier, Petitioner fails to make that required showing.

Indeed, prior to his plea, a medical expert found him competent to proceed. Resp. Ex. A at 141. Trial counsel and the state advised the trial court of the expert's finding and trial counsel waived presentation of testimony and stipulated to the expert report. Resp. Ex. E at 314-15. In accordance with that stipulation, the trial court entered an order finding Petitioner competent. Thereafter, the state withdrew its death notice and Petitioner ultimately entered into a negotiated plea of guilty to second degree murder in exchange for a thirty-five-year term of incarceration. Petitioner's sworn statements made at his plea colloquy were coherent and voluntarily made, and clearly demonstrate Petitioner understood the nature of the proceedings and the consequences from it.

Thus, Petitioner has failed to establish he was actually incompetent at the time he entered his plea. And he cannot show that but for trial counsel's alleged errors, he would have received a competency hearing and been found incompetent. Nor can he show that but for the errors, he would have declined the state's negotiated plea offer and insisted on going to trial on the first degree murder charge, where he was facing a mandatory life term of incarceration. As

such, the state court adjudication of these issues were neither contrary to, nor an unreasonable application of <u>Strickland</u>, and were not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Two and Ground Three are denied.

### B. Ground Four

Petitioner seemingly argues that the trial court violated his due process rights when finding Petitioner's competency was restored, because it relied on only one expert's evaluation and refused to consider the three prior experts' evaluations. Doc. 1 at 10. According to Petitioner, the trial court could only make such a determination after considering "no more than 3 nor fewer than 2" expert reports.

Petitioner argues he exhausted this claim by raising it in state court during his postconviction proceedings. Doc. 1 at 10, 6-7. Petitioner, however, did not raise this claim in his Rule 3.850 motion, nor did he raise it during his direct appeal. <u>See</u> Resp. Exs. E at 1-19; B. Thus, there is no evidence that Petitioner raised this issue in state court and thus it is now unexhausted and procedurally barred. Petitioner also fails to demonstrate cause for or prejudice from the procedural bar and he does not argue that a fundamental miscarriage of justice will result if the claim is not addressed on the merits.

In any event, even if Petitioner properly exhausted this claim in state

court, the Court is precluded from considering the claim because it is an issue of state law. Here, Petitioner argues that the trial court failed to comply with Florida Rule of Criminal Procedure 3.210, which provides that a defendant may be evaluated by "no more than 3 experts" when determining competency. Fla. R. Crim. P. 3.210(b). Whether the trial court followed state procedures is a matter of state law not proper for federal habeas review.[7] As such, Ground Four is denied.

## V.   **The Reply**

Although the Grounds in the Petition seem to only turn on allegations that Petitioner was incompetent at the time of his guilty plea, the Response and the Reply reference a separate claim – that trial counsel was ineffective for failing to investigate a viable insanity defense before Petitioner's plea. See Resp. at 29-32; Doc. 11 at 7. Generally, arguments raised for the first time in a reply brief are not properly before a reviewing court. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) (citations omitted). But even if this claim were properly before the Court, it lacks merit.

Petitioner raised this issue in ground one of his Rule 3.850 motion. Resp. Ex. E at 8. The trial court summarily denied the claim:

> The Defendant alleges that counsel was ineffective in failing to pursue an insanity defense.

---

[7] Also, by its own terms, this does not mean that three experts are required to determined competency.

24

Defendant claims that counsel did not investigate and present the defense of insanity. Defendant alleges that counsel did not inform the Defendant that such a defense was available, and that had he known, Defendant would not have entered the plea and would have prevailed on an insanity defense and instead would have been civilly committed. However, this Court finds that the Defendant's allegations are refuted by the record. Smith v. State, 21 So. 3d 72, 74 (Fla. 1st DCA 2009). To determine whether the record refutes an allegation, the Court may rely on the sworn testimony the defendant has given in the plea colloquy as well as the plea agreement filed with the Court. Johnson v. State, 22 So. 3d 840, 844 (Fla. 1st DCA 2009). Any allegations which contradict those answers will not be entertained. See Id.

First, during the plea colloquy with the trial court, the Defendant testified that he was satisfied with his counsel's representation, that counsel had answered all of his questions to Defendant's satisfaction, and that Defendant had enough time to review his cases with his attorney. Defendant affirmed that there was nothing that counsel had done or failed to do which would have caused the Defendant to need more time before going through with his plea and sentence in this matter. It is well-settled in Florida that a defendant may not seek to go behind his sworn testimony at a plea hearing in a motion seeking post-conviction relief. Stano v. State, 520 So. 2d 278, 280 (Fla. 1988); Bir v. State, 493 So. 2d 55, 56 (Fla. 1st DCA 1986); Dean v. State, 580 So. 2d 808, 810 (Fla. 3d DCA 1991).

In this matter, the record establishes that Defendant was satisfied with his attorney's representation. When a defendant enters a plea and declares under oath that he is satisfied with his counsel, as this Defendant did, he may not attack counsel's effectiveness for failure to investigate or

defend a charge in postconviction proceedings. <u>See Smith v. State</u>, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010). "By insisting on pleading guilty . . . [the defendant] render[s] any further investigation pointless." <u>Stano</u>, 520 So. 2d at 280. Thus, a claim based on counsel's failure to investigate is meritless. <u>Smith</u>, 41 So. 3d at 1040.

Additionally, the Plea Form that was reviewed and signed by the Defendant refutes the Defendant's allegations. Defendant confirmed that he read, signed and understood the contents of the Plea Form, wherein he asserts:

> "I have had ample time to discuss this agreement with my attorney. My attorney and I have read this agreement regarding my guilty plea together in private, and my attorney has explained all portions of this agreement to my complete understanding and satisfaction. *We have fully discussed all aspects of the case, including all possible defenses to all charges, including* self-defense and any defense based in disability, disease, *insanity* or intoxication. My attorney has given me the opportunity to ask questions and has answered all of my questions fully and completely. My attorney has taken all actions requested by me, or has explained to my satisfaction and agreement why such actions should not be taken, and I concur with my attorney's decisions in that regard. I am completely satisfied with the services rendered by my attorney on my behalf in this case." (emphasis added) (Exhibit N).

The Defendant, in his plea form, affirmed that counsel had discussed the insanity defense with him prior to Defendant entering his plea. This Court will not

entertain allegations to the contrary. Therefore, relying upon both the sworn testimony of the Defendant and the signed plea form, this Court finds that the record refutes his allegations, and he is not entitled to relief.

Moreover, the record demonstrates that defense counsel investigated not only Defendant's mental health and competence, but also a possible insanity defense. Defense counsel's Motion to Permit Defense Counsel and Videographer to Attend Psychological Examination and Testing, outlines that counsel sought "to determine Defendant's competency to proceed in his present mental condition and *whether Defendant was competent at the time the murder was committed*." (emphasis added). Defense counsel also deposed the witnesses who, Defendant alleges, saw and heard the Defendant on the night of the murder and could attest to Defendant's odd behavior – Roosevelt Henry, Satirica Stewart and Mikel Ling. Once Defendant chose to plead guilty, however, there was no opportunity to present or reason to continue investigating an insanity defense. "By insisting on pleading guilty . . . [the defendant] render[s] any further investigation pointless." Stano, 520 So. 2d at 280.

Lastly, Defendant's claim that he is prejudiced because he would have succeeded with an insanity defense and thereafter been civilly committed is speculative. "Postconviction relief cannot be based on speculation or possibility." Maharaj v. State, 778 So. 2d 944, 951 (Fla. 2000); see also Brown v. State, 827 So. 2d 1054, 1056 (Fla. 2d DCA 2002) (finding that postconviction claim "is speculative, attenuated, and too fanciful to warrant relief."). Thus, Defendant is not entitled to relief on this ground.

Resp. Ex. E at 193-95 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. H.

27

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court finds trial counsel did investigate a potential insanity defense. Indeed, during Petitioner's first competency evaluations, trial counsel filed a motion requesting permission to be present during the examinations to determine whether Petitioner "was competent at the time the murder was committed." Resp. Ex. A at 43. Also, Petitioner's plea agreement states that counsel discussed any potential defenses with Petitioner, including an insanity defense. Id. at 201-02. These documents show that trial counsel did consider a potential insanity defense and investigated the viability of that defense. Nevertheless, he likely made a strategic decision to engage in plea negotiations with the state, which ultimately led to the withdrawal of the death notice and a thirty-five-year term of incarceration for second degree murder. Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. This claim is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[8]

---

[8] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of July,

2023.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Jumar Henry, #J33836
      Counsel of record